**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

MICHAEL CERVANTES                                                                        PLAINTIFF
ADC #601673

v.                                            3:17cv00081-JM-JJV

MISSISSIPPI COUNTY
DETENTION CENTER; *et al.*                                                         DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge
James M. Moody, Jr.  Any party may serve and file written objections to this recommendation.
Objections should be specific and should include the factual or legal basis for the objection.  If the
objection is to a factual finding, specifically identify that finding and the evidence that supports
your objection.  An original and one copy of your objections must be received in the office of the
United States District Court Clerk no later than fourteen (14) days from the date of the findings
and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely
objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or
additional evidence, and to have a hearing for this purpose before the District Judge, you must, at
the same time that you file your written objections, include the following:

1.       Why the record made before the Magistrate Judge is inadequate.

2.       Why the evidence proffered at the hearing (if such a hearing is granted) was not
offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

## I.    INTRODUCTION

Michael Cervantes ("Plaintiff"), an inmate at the Wrightsville Unit of the Arkansas Department of Correction ("ADC"), filed this action *pro se* pursuant to 42 U.S.C. § 1983 against Mississippi County Detention Center officials Luther Whitfield, Brandon Petty, Ronnie McDermott,[1] and Diane Wyles[2] (collectively, "Defendants") in their personal and official capacities.[3]  (Doc. No. 2.)  He alleged that he was denied a preliminary hearing after his arrest for probation revocation and deliberate indifference to his serious medical needs; he seeks damages. (*Id.*)  Plaintiff has filed a Motion for Summary Judgment.  (Doc. No. 50.)  In response, Defendants filed a competing Motion for Summary Judgment.  (Doc. Nos. 52-55.)  Plaintiff has not responded and this matter is now ripe for a decision.  After careful review of the record, I recommend

---

[1] The Clerk of the Court is directed to change Defendant McDermick's name on the docket to Ronnie McDermott.  (Doc. No. 11.)

[2] The Clerk of the Court is directed to change Defendant Wiles's name on the docket to Diane Wyles.  (Doc. No. 11.)

[3] Plaintiff also sued the Mississippi County Detention Center, State of Arkansas, Peggy Schultz, Catherine Pamela Dean, Dale Aubry Cook, and Wilson, but his claims against each of them have been dismissed.  (Doc. Nos. 15, 30.)

Plaintiff's Motion be denied, Defendants' Motion be granted, and this case be dismissed with prejudice.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.    ANALYSIS

As explained in more detail below, Plaintiff's claim that he was unlawfully denied a preliminary hearing after his arrest for probation revocation fails because Plaintiff was being held simultaneously on other charges.  His deliberate indifference claim fails because Plaintiff has not established that any Defendant knew about, but disregarded, his serious medical needs.

### A.    Preliminary Hearing

On September 16, 2013, Plaintiff pled guilty in the Circuit Court of Mississippi County, Arkansas[4] to furnishing prohibited articles.  (Doc. No. 53 at 1; Doc. No. 53-1.)  He was sentenced to supervised probation up to and including September 16, 2018.  *(Id.*)

On April 27, 2016, Plaintiff pled guilty to theft of public benefits, also in Mississippi County.[5]  (Doc. No. 53 at 1; Doc. No. 53-2.)  He was ordered to pay fines and fees and received a sentence of supervised probation up to and including April 27, 2019.  (Doc. No. 53 at 1-2; Doc. No. 53-2 at 10-11.)

While on probation, Plaintiff was charged in Lawrence County, Arkansas, with committing battery on October 18, 2016, among other things.[6]  (Doc. No. 53-3 at 11-13.)

Around six weeks after Plaintiff was charged in Lawrence County, Mississippi County prosecutors filed a revocation petition in each of Plaintiff's two Mississippi County cases.  The petitions to revoke probation were based on Plaintiff's battery charge and committing other offenses while in Lawrence County.  (Doc. Nos. 53-1, 53-2.)  On December 5, 2016, after a judge found probable cause, a warrant for Plaintiff's arrest was issued.  (Doc. No. 53-1 at 1-5; Doc. No. 53-2 at 13-17.)

---

[4] *State v. Cervantes*, 47OCR-13-36.
[5] *State v. Cervantes*, 47OCR-16-75.
[6] *State v. Cervantes*, 38CR-16-229.

On March 22, 2017, Plaintiff was arrested in Craighead County.  He was transported to Mississippi County and booked in to the Mississippi County Detention Center.  (Doc. No. 53-4 at 1-3; 4-12.)  The Mississippi County arrest report reflects that at the time of booking a hold was placed on Plaintiff for Lawrence County.  (*Id*. at 5.)

On April 5, 2017, plaintiff pled guilty in his Lawrence County case.  (Doc. No. 53-3 at 5-8.)  He was sentenced to sixty days in custody, time served, and sixty months suspended.  (*Id*. at 5-8.)  Five days later, Plaintiff began filing grievances at the Mississippi County Detention Center asserting that Mississippi County had no reason to keep him in custody.  (Doc. No. 53-4 at 17.)  Shortly after, he filed his Complaint in this case on April 17, 2017.  (Doc. No. 2.)

Plaintiff contends he was "picked up on bogus charges" and held for weeks without receiving a bond hearing.  (Doc. No. 2 at 4, 6-9.)  He maintains that upon being booked in to the Mississippi County Detention Center he was told that he would see a judge on March 23, 2017 for a bond hearing on his revocation petitions.  (*Id*. at 6.)  According to Plaintiff, he did not get a bond hearing in a timely manner, and he informed Defendants Whitfield, Wyles, and McDermott of his concerns—to no avail.  (*Id*. at 6-7.)  At his deposition, Plaintiff explained that he "should already have had a bond three days after [he] got locked up."  (Doc. No. 53-3 at 47.)

"Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty."  *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973).  Accordingly, a probationer is entitled to a preliminary and a final revocation hearing.  *Id*. (*citing Morrissey v. Brewer*, 408 U.S. 471 (1972)).  The preliminary hearing is "to determine whether there is probable cause to believe that [the probationer] has committed a violation . . . ."  *Id*.  There are limited circumstances, however, when a preliminary probable cause hearing is not required.  *See, for example*, *Chilembwe v. Wyrick*, 574 F.2d 985, 987 (8th Cir. 1978) ("[W]here obtaining permission

before leaving the state is a condition of parole, a parolee's presence in another state without permission is sufficient probable cause to believe he committed . . . a violation of his parole such that a preliminary probable cause hearing is not required."). One such circumstance is when an individual is being held on other charges in addition to the alleged violation. *United States v. Pardue*, 363 F.3d 695, 697-98 (8th Cir. 2004) (when individual held on independent criminal charges as well as violations of supervised release preliminary probable cause hearing requirement not applicable.)

Plaintiff complains that he did not receive a preliminary hearing. At the time Plaintiff was arrested, however, he was on hold for the independent Lawrence County charges, as well as the revocation warrants (which had been issued after a finding of probable cause). Under those circumstances, the preliminary hearing requirement is waived. *Pardue*, 363 F.3d at 697-98.

Then, on April 5, 2017, Plaintiff pled guilty to the Lawrence County charges, including the alleged battery on which his revocation petition was, in part, based. (Doc. No. 53-3 at 5-8.) As explained in Ark. Code Ann. § 16-93-307(d)(2), a preliminary hearing is not required in revocation proceedings if "[t]he revocation is based on the defendant's commission of an offense for which he or she has been tried and found guilty in an independent criminal proceeding . . . ." Ark. Code Ann. § 16-93-307(d)(2). Here, Plaintiff's revocation proceedings had been based, in part, on the battery charge to which he pled guilty. His guilty plea likewise waived the preliminary hearing requirement. Plaintiff's final revocation hearing had to be held within a reasonable time. Ark. Code Ann. § 16-93-307(b)(2.)

Plaintiff's bond was set in the amount of $2,500 on April 25, 2017. (Doc. No. 53-5 at 44; Doc. No. 53-2 at 18.) He posted bond on April 28 and his violations were *nolle prossed* on May 30, 2017, just over two months after his original arrest date. (Doc. No. 53-4 at 11; Doc. No. 53-1

at 7; Doc. No. 53-2 at 18-19.)  Considering the record in the light most favorable to Plaintiff, I find no violation of his due process rights under these circumstances.  Because Plaintiff has not submitted evidence creating a genuine issue of material fact that would preclude summary judgment in Defendants' favor, Plaintiff's Motion for Summary Judgment should be denied on this issue; summary judgment should be granted in Defendants' favor and Plaintiff's claims regarding lack of a preliminary hearing should be dismissed.

> **B.      Deliberate Indifference**

Plaintiff alleges he was not given his mental health medication at the Detention Center. (Doc. No. 2 at 8.)  The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.  U.S. CONST. AMEND. VIII.  That prohibition gives rise to the government's duty to provide medical care to prisoners.  "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (*citing Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." *Robinson v. Hager*, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted).  "A serious medical need is 'one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"  *Dadd v. Anoka County*, 827 F.3d 749, 755 (8th Cir. 2016) (internal citation omitted).   "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).  To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need.  *See*

*Washington v. Denney*, 900 F.3d 549, 559 (8th Cir. 2018); *McRaven v. Sanders*, 577 F.3d 974, 981 (8th 2009).

While Plaintiff claims deliberate indifference, he did not make jail officials aware of his medical needs when he was booked into the Mississippi County Detention Center.  His inmate medical form reflects that on March 23, 2017, he responded "no" to a list of medical questions including whether he was currently taking any medications.  (Doc. No. 53-4 at 12.)  He testified at his deposition that he was not taking any medication at the time he was booked.  (Doc. No. 53-5 at 18.)  On March 27, 2017, Plaintiff was seen by a doctor.  (Doc. No. 53-4 at 41-43.)  On that same day he filed a grievance that he had not been receiving his medication for "seizures, bi-polar, blood pressure."  (*Id*. at 19.)  He also complained the doctor he had seen that day was a joke.  (*Id*.)  The response to the grievance explained that any medications must be prescribed by or approved by the jail physician, who is not a party to this lawsuit.  (*Id*.)  The response also noted that Plaintiff was scheduled to see the doctor on his next clinic day, which was each Monday.  (*Id*.)

After March 27, 2017, Plaintiff filed grievances in which he complained about his lack of a bond hearing and about the food  (*Id*. at 20-22), but he did not make any further medical complaints until April 15, 2017 when he asked to be sent to "mental health" because "not being able to take [his] phyc [sic] meds [was] messing with [his] emotions / depression."  (Doc. No. 53-4 at 15.)  Plaintiff was put on the list to see the doctor during the next clinic on April 24, 2017.  (*Id*. at 15.)  According to Plaintiff's Complaint, he "faked a suicide attempt" to get to talk to Defendant Whitfield.  (Doc. No. 2 at 7.)  On April 18, 2017 Plaintiff attempted to harm himself.  The nurse's notes indicate that Plaintiff was threatening suicide and that several red areas were visible on his wrists.  (Doc. No. 53-4  at 48.)  When asked about the areas, Plaintiff responded that

he had tried to cut his wrists.  (*Id*. at 33, 48.)  He was placed on suicide watch in a special cell,

seen by a "Rebecca @ Mid South," and transferred to an "acute facility."  (*Id*. at 48.)

Plaintiff was hospitalized until Saturday, April 22, 2017 at which time he went back to jail.

(Doc. No. 53-5 at 31.)  The St. Vincent Health System discharge-face sheet provides that Plaintiff's

chief complaint was "[i]ssues at the County Jail."  (*Id*. at 103.)  The document further provides, in

part:

> [Plaintiff] has a long history of violence, and he is quite proud of the same and prior
> to admission, he was demanding Valium.  He presents to us with a legal status and
> suicidal ideation with planning as well as reported intent, but obviously malingering
> to avoid incarceration as high on the differential.

(*Id*. at 102.)   Plaintiff's discharge diagnosis was antisocial personality disorder, dysthymic

disorder, and polysubstance abuse.  (*Id*. at 109.)  He was prescribed allopurinal, formoterol-

mometasone, lisinopril, nicotine, and trazodone.  (*Id*. at 108.)  At discharge he was instructed to

resume his usual diet as tolerated and to resume activity as tolerated.  (*Id*. at 110.)  It was also

noted that he refused tobacco quitline referral.  (Doc. No. 53-5 at 110.)  As described by the

discharge-face sheet:

> by the date of discharge the patient convincingly denied any thoughts of harming
> self or others.  No neurovegetative symptoms, mania, hypomania, or psychosis was
> evidenced or endorsed.  At that point, a standard suicide and violence risk
> assessment was performed and the case was discussed at length with Dr. Labbate
> and we were in complete agreement that the patient was no longer an acute safety
> risk.  As such, the patient was discharged to the least restrictive treatment setting
> possible. . . . Although patient is not an acute safety risk, there remains a
> considerable moderate chronic risk for suicide and violence given the overall
> history.  Per our assessment, the patient has the ability to weigh the risks and
> benefits of giving and withholding information.

(*Id*. at 104.)

When Plaintiff returned to the jail on April 22, he alleges he was not allowed to take his

hospital-prescribed medications.  (*Id*.  at 37.)  His discharge notes reflect, however, that even at

the hospital Plaintiff refused to take the trazodone, the only anti-depressant prescribed to him.  (*Id*. at 111.)  On April 23, 2017, Plaintiff again tried to harm himself by swallowing metal objects and was re-hospitalized on April 24, 2017.  (*Id*. at 129.)

Plaintiff brought suit under 42 U.S.C. § 1983.  To state a claim for relief under section 1983, the complaint must allege that a person acting under the color of state law deprived the plaintiff of a constitutional or federally-protected statutory right.  *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999).  "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights."  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

During his deposition, Plaintiff explained that he sued Defendant McDermott because he had knowledge of Plaintiff's medical situation, but Plaintiff acknowledged that Defendant McDermott could not give Plaintiff medication that "medical" would not give to McDermott. (Doc. No. 53-5 at 60.)  Plaintiff's allegations against Defendant McDermott do not indicate that Defendant McDermott ignored Plaintiff's serious medical needs.  (*See* Doc. No. 52; Doc. No. 53-5 at 60).   And Plaintiff has not provided any evidence showing that any of the remaining Defendants were deliberately indifferent, either.  (*See Id*.)  Accordingly, his personal capacity claims against each Defendant fail.  I find Defendants are entitled to qualified immunity.  *Stanton v. Sims*, 571 U.S. 3, 5 (2013); *Story v. Foote*, 782 F.3d 968, 970 (8th Cir. 2015).

Plaintiff's official capacity claims also fail because he has not identified a custom or practice as the driving force behind the alleged violation of his rights. *Corwin v. City of Independence, Missiouri*, 829 F.3d 695, 699-700 (8th Cir. 2016).

Plaintiff's Motion for Summary Judgment should be denied, and summary judgment in favor of Defendants on Plaintiff's medical indifference claims should be granted.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.    Plaintiff's Motion for Summary Judgment (Doc. No. 50) be DENIED.

2.    Defendants' Motion for Summary Judgment (Doc. No. 52) be GRANTED.

3.    Plaintiff's claims against the Defendants Luther Whitfield, Brandon Petty, Ronnie McDermott, and Diane Wyles be DISMIMSSED with prejudice.

4.    Plaintiff's Complaint (Doc. No. 2) be DISMISSED with prejudice.

5.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

DATED this 16th day of October 2019.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

11